# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 04-1586


**LABOR FINDERS**

**VERSUS**

**JOSEPH JEAN BATISTE**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 03-03179
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE


**\*\*\*\*\*\*\*\*\*\***


**MARC T. AMY**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED IN PART; REVERSED IN PART.**

**Michael E. Parker**
**Allen & Gooch**
**Post Office Drawer 3768**
**Lafayette, LA   70502-3768**
**(337) 291-1350**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
       **Labor Finders**

**Marianna Broussard**
**Hill & Beyer, APLC**
**Post Office Box 53006**
**Lafayette, LA   70505-3006**
**(337) 232-9733**
**COUNSEL FOR DEFENDANT/APPELLEE:**
       **Joseph Jean Batiste**

AMY, Judge.

The employer filed a disputed claim for compensation, asserting that its injured employee made untrue statements regarding his medical history in order to obtain workers' compensation benefits. The employee sought reinstatement of benefits. The workers' compensation judge found in favor of the employee, reinstating benefits and awarding attorney's fees for an impermissible termination of benefits. The employer appeals. For the following reasons, we affirm in part and reverse in part.

## Factual and Procedural Background

The record establishes that at the time of the February 12, 2003 work-related accident at issue, Joseph Jean Batiste was employed by Labor Finders as a general laborer. While working on a road construction project, Mr. Jean Batiste was engaged in "pulling concrete with a pull along" when he fell. Thereafter, Mr. Jean Batiste began complaining of lower back pain. By March 2003, Mr. Jean Batiste was diagnosed with a herniated lumbar disc. Although he was released to return to light duty work, the modified working arrangements at Labor Finders were unsuccessful. Mr. Jean Batiste's employment was terminated by Labor Finders by letter dated April 24, 2003. The note informing Mr. Jean Batiste of the termination reports that the termination was due to three warnings of failure to report to work or unacceptable work effort.

Labor Finders filed a claim form instituting this matter on May 2, 2003 requesting the suspension of benefits for violation of La.R.S. 23:1208. According to Labor Finders, Mr. Jean Batiste violated La.R.S. 23:1208 due to his repeated denials of prior back injury or workers' compensation claims. Labor Finders points to statements to the physician examining Mr. Jean Batiste after the accident and to Ivory Loring, the workers' compensation claims adjuster, in which prior back injuries were

denied. In fact, medical records indicate that Mr. Jean Batiste previously reported back pain to physicians and had been diagnosed as suffering from chronic pain syndrome and mild lumbar strain.

Labor Finders also notes that Mr. Jean Batiste filed workers' compensation claims with previous employers. According to Ms. Loring, this failure to inform of prior injuries in the pre-employment application was the basis for the termination of benefits, pursuant to La.R.S. 23:1208.1. Mr. Jean Batiste also filed a claim form, seeking reinstatement of benefits and attorney's fees for wrongful termination of benefits.

The workers' compensation judge found in favor of Mr. Jean Batiste, reinstating benefits and awarding $3,000 in attorney's fees. Labor Finders appeals, presenting the following issues for review:

1. Did the Court err in allowing Dr. Friedberg to testify as to Plaintiff's "intent" when he lied to Ivory Loring in two recorded statements about prior back injuries and when he lied to Dr. Alleman when he denied having prior back problems?

2. To what extent will the judicial system excuse the lies of a worker's compensation plaintiff because of lack of social judgment?

3. Does a Hearing Officer commit reversible error by not ruling on a defense raised by the employer when it is clear that ruling on the issue would cause the injured employee to forfeit all benefits under the Workers' Compensation Act?

4. Should the plaintiff have been awarded attorney's fees of $3,000?

2

**Discussion**

*Admissibility of Psychologist's Report and Testimony*

Prior to the hearing on the matter, Labor Finders challenged the admissibility of a report issued by Dr. Ted Friedberg, a psychologist, and his related testimony. Dr. Friedberg evaluated Mr. Jean Batiste, particularly with regard to his intellectual and cognitive abilities and opined as to whether those capabilities were sufficient so as to allow Mr. Jean Batiste to willfully deceive with regard to misstatements. This intent to deceive was relevant to Labor Finders' La.R.S. 23:1208 claim. Labor Finders argued to the workers' compensation judge that Dr. Friedberg's testimony was a comment as to credibility and would intrude on the province of the trier of fact. Labor Finders asserts that permitting the introduction of the evidence violates *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) insofar as it is not a scientific opinion, but only a subjective belief.[1]

The Louisiana Code of Evidence provides as follows with regard to expert testimony:

> **Art. 702.    Testimony by experts**
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

> **Art. 703.    Bases of opinion testimony by experts**
> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by

---

[1]In *Cheairs v. State ex rel. DOTD*, 03-680 (La. 12/3/03), 861 So.2d 536, the Louisiana Supreme Court noted that *Daubert*, 509 U.S. 579, 113 S.Ct. 2786 established new standards for use by trial courts in evaluating the admissibility of expert testimony. The supreme court reviewed the nonexclusive *Daubert* factors to be considered, including: "(1) The 'testability' of the scientific theory or technique; (2) Whether the theory or technique has been subjected to peer review and publication; (3) The known or potential rate of error; and (4) Whether the methodology is generally accepted in the scientific community." *Cheairs*, 861 So.2d at 541.

experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

**Art. 704. Opinion on ultimate issue**
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.

Dr. Friedberg's report, one of the subjects of the motion in limine, indicates that he evaluated Mr. Jean Batiste upon referral by counsel "to assess intellectual and cognitive function, as well as academic abilities." Dr. Friedberg also noted that: "Referral was based upon legal issues in which Mr. Jean-Batiste was not clear and comprehensive in describing his prior medical history." Dr. Friedberg's report continues with explanation of Mr. Jean Batiste's results on several tests performed. The portion of the report objected to is as follows:

> In summary, Mr. Jean-Batiste reveals longstanding academic and cognitive difficulties, and diminished social intelligence. Nothing within the profile would suggest that there was an "intent" to deceive. His past history reflects a noticeable lack of social judgment and reasoning, which makes it difficult for him to understand the workings of the legal system.

The testimony objected to by Labor Finders followed these same lines, linking the test results with his conclusion that Mr. Jean Batiste lacked the capability of "being organized enough to decide this was going to be some kind of plan on his part to do something like this." Dr. Friedberg continued, stating: "The idea that - - that he has some complex plan in order to do something that there was an intent to deceive. In other words, the test for malingering didn't suggest that he was malingering." Dr. Friedberg testified that his opinion that Mr. Jean Batiste did not willfully make misrepresentations was based on the clinical tests that were administered.

4

We find no reversible error in the workers' compensation judge's denial of the motion in limine. In addition to La.Code Evid. art. 704 permitting the introduction of expert testimony as to the ultimate issue to be determined at the hearing, Dr. Friedberg's conclusions/opinions resulted from testing conducted to evaluate Mr. Jean Batiste's intellectual and cognitive abilities. Furthermore, we note that Labor Finders presented the deposition of their own expert, Dr. Thomas J. Hannie, who performed a battery tests, but drew different conclusions from his testing. Dr. Hannie explained that he "found it was highly likely that [Mr. Jean Batiste] was exaggerating his symptoms in order to form dependent attachments." He stated that he thought that Mr. Jean Batiste "was likely to continue his symptoms to remain dependent on others and that secondary gain was a significant issue." This testimony is no less speculative than that presented by Mr. Jean Batiste.

This assignment lacks merit.

*Louisiana Revised Statutes 23:1208*

The trial court denied Labor Finders' La.R.S. 23:1208 claim, finding that Mr. Jean Batiste had not willfully misrepresented prior injuries or claims in order to obtain workers' compensation benefits. Labor Finders assigns this denial as error, pointing to Mr. Jean Batiste's history of back pain and his repeated denials of having a back injury.

Louisiana Revised Statutes 23:1208 provides:

A.   It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

5

E.     Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

A successful La.R.S. 23:1208 defense requires only that: "(1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Const. Co.,* 94-2708, p. 7 (La. 9/5/95), 660 So.2d 7, 12.

In denying the La.R.S. 23:1208 defense, the workers' compensation judge noted that Mr. Jean Batiste "explained convincingly" his perception as to what an injury was, and that his memory was bad. A workers' compensation judge's determination as to whether the elements of La.R.S. 23:1208 are satisfied is considered on appeal under the manifest error standard of review. *Jenkins v. Roy O. Martin Lumber, Inc.*, 03-1435 (La.App. 3 Cir. 3/3/04), 868 So.2d 250, *writ denied*, 04-1140 (La. 6/25/04), 876 So.2d 844.

It is unquestioned that Mr. Jean Batiste had previously complained of back pain and had been treated for these complaints. It is also unquestioned that he failed to report these prior back complaints upon questioning by Ms. Loring and during his initial physician's visit after the injury. The transcribed versions of Ms. Loring's interviews of Mr. Jean Batiste are contained in the record as is the physician's report wherein he denies having been told he had "[b]ack or neck problems." The element found lacking by the workers' compensation judge was whether these misstatements were made for the purpose of obtaining workers' compensation benefits. Our review of the record does not indicate that the workers' compensation judge was required to find that this element was met.

Mr. Jean Batiste explained that, when asked about prior back injuries, he felt that he was being asked if he had such injuries that would prevent him from working. He confirmed that he had previously received treatment for back complaints, but that "[t]here's nothing to be found. No x-rays with no bones broken, no muscle damage and all this nerves and all that." Although the medical records entered into evidence indicate that Mr. Jean Batiste had been treated for chronic pain syndrome after a work-related fall in 1988 and mild lumbar strain in April 2002, the workers' compensation judge was not required to find that these injuries were denied by the claimant for purposes of obtaining compensation benefits. Rather, the workers' compensation judge was made aware of Mr. Jean Batiste's limited education and was presented with testimony regarding his performance on intellectual and cognitive ability testing. The workers' compensation judge was entitled to consider these factors and make associated credibility determinations in concluding that Mr. Jean Batiste did not make the subject misstatements with the intent to deceive. The record supports a determination that they were made without appreciating the significance of any previously resolved injuries.

Accordingly, this assignment of error is without merit.

*Louisiana Revised Statutes 23:1208.1*

Labor Finders argues that the workers' compensation judge erred in failing to find forfeiture of benefits pursuant to La.R.S. 23:1208.1 as Mr. Jean Batiste denied previous back injuries on his pre-employment medical questionnaire. This denial, Labor Finders contends, precluded it from seeking recovery under the Second Injury Fund. Labor Finders asserts that since there is no dispute as to whether Mr. Jean Batiste misstated his history on the questionnaire, and the element of willful intent

7

is not required for recovery under this provision, entitlement to forfeiture pursuant to La.R.S. 23:1208.1 was proven.

Louisiana Revised Statutes 23:1208.1 provides:

> Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

In order to obtain forfeiture under La.R.S. 23:1208.1, an employer must prove that the employee made a false statement, that there was prejudice to the employer, and that the notice requirements of the statute were met. In this case, there is no question that a false statement was made and that the notice requirements were met. Thus, the issue remains as to whether Labor Finders was prejudiced by Mr. Jean Batiste's failure to reveal any prior injuries.

In this case, the "prejudice" allegedly sustained by the employer was the inability to recover under the Second Injury Fund. *See* La.R.S. 23:1378. However, as noted by the Louisiana Supreme Court in *Nabors Drilling USA v. Davis*, 03-136, p. 8 (La. 10/21/03), 857 So.2d 407, 416, "[t]he employer is not entitled to reimbursement from the second injury fund merely because an employee with a pre-existing disability is subsequently injured. The employer has the burden of proving each element entitling him to reimbursement." Listing the elements, the supreme court stated:

8

[T]o be reimbursed from the second injury fund, an employer must prove three elements. First, the employer must prove that the employee had a permanent partial disability satisfying the requirements of LSA-R.S. 23:1378(F), *i.e.* that the employee's preexisting condition is of "such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed." Second, the employer must prove that he had actual knowledge of the employee's permanent partial disability before the occurrence of the injury forming the basis of the compensation claim. Finally, the employer must prove that the permanent partial disability merged with the injury to produce a greater disability.

*Id.* at 417 (citations omitted).

It is the element of "merger" that is problematic for Labor Finders given the evidence presented. The record establishes that Mr. Jean Batiste had a prior diagnosis of mild lumbar strain and that he had earlier received treatment for chronic pain syndrome. However, the present diagnosis is of a herniated lumbar disc. There is no testimony indicating that the herniated disc was related to, worsened, or caused by any previous injuries. Accordingly, Labor Finders failed to satisfy the applicable burden of proof.

This assignment lacks merit.

*Attorney's Fees*

Finally, Labor Finders questions the trial court's imposition of attorney's fees pursuant to La.R.S. 23:1201.2. At the time of the events at issue, La.R.S. 23:1201.2 provided:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.

9

The Louisiana Supreme Court has explained that arbitrary and capricious behavior must be a "willful and unreasonable action, without consideration and regard for the facts and circumstances presented." *J.E. Merit Constructors, Inc. v. Hickman*, 00-943, p. 5 (La. 1/17/01), 776 So.2d 435, 437-38. The imposition of attorney's fees pursuant to La.R.S. 23:1201.2 is inappropriate in cases where a bona fide dispute exists regarding entitlement to benefits. *Id.* The employer's ultimate loss of a disputed claim does not, alone, signal that the imposition of attorney's fees is appropriate. *Id.*

The workers' compensation judge imposed attorney's fees in this matter, explaining that the benefits were terminated wrongfully and that "they should not have been terminated based on the grounds that they were terminated." Attorney's fees in the amount of $3,000 were awarded. A workers' compensation judge's determination as to attorney's fees pursuant to La.R.S. 23:1201.2 is based on questions of fact and will not be disturbed on appeal absent manifest error. *Young v. Gulf Coast Carpets*, 04-854 (La.App. 3 Cir. 11/17/04), 888 So.2d 1074. Our review of the facts in this case reveals such error, requiring reversal of the imposition of attorney's fees.

Benefits were terminated in this case after discovery that Mr. Jean Batiste denied previous injuries on his pre-employment application form, when in fact he had sustained injury and treatment. Whether the employer was ultimately successful on its La.R.S. 23:1208.1 remedy is not determinative of whether attorney's fees are appropriate. Furthermore, although it was also unsuccessful under La.R.S. 23:1208, the employer had a legitimate basis for pursuing this defense given its knowledge of Mr. Jean Batiste's prior injuries and workers' compensation claims and his repeated

10

refusal of same. Thus, its termination was sufficiently well founded so as to preclude a finding that it was "arbitrary, capricious, and without probable cause" as is required under La.R.S. 23:1201.2. Accordingly, we reverse the award of attorney's fees.

## DECREE

For the foregoing reasons, we affirm the trial court's ruling insofar as it denied forfeiture pursuant to La.R.S. 23:1208 and La.R.S. 23:1208.1. We reverse the trial court's imposition of attorney's fees. Two-thirds of the costs of this matter are assigned to Labor Finders and the remaining one-third is assigned to Joseph Jean Batiste.

**AFFIRMED IN PART; REVERSED IN PART.**