STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-482

CAJUN RENTAL & SERVICES

VERSUS

EDWIN "SONNY" HEBERT

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT # 4
PARISH OF VERMILION, NO. 04-00612 C/W 04-01217
SHARON MORROW, WORKERS COMPENSATION JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Mark L. Riley
Onebane Law Firm
Post Office Box 3507
Lafayette, LA   70502-3507
(337) 237-2660
COUNSEL FOR PLAINTIFF/APPELLEE:
        Cajun Rental & Services

Jason M. Welborn
Post Office Box 2053
Lafayette, LA   70502-2053
(337) 233-3185
COUNSEL FOR DEFENDANT/APPELLANT:
        Edwin "Sonny" Hebert

AMY, Judge.

In this workers' compensation matter, the insurance company contends that the claimant employee has violated La.R.S. 23:1208 thereby forfeiting his rights to further workers' compensation benefits. The workers' compensation judge found that the claimant intentionally misrepresented his abilities for the purpose of bolstering his entitlement to workers' compensation benefits. The claimant appeals, arguing that the workers' compensation judge committed manifest error in terminating benefits after finding that a violation of La.R.S. 23:1208 had occurred. For the following reasons, we affirm.

## Factual and Procedural Background

The record indicates that Edwin "Sonny" Hebert and his wife owned and operated Cajun Rental & Services, Inc (hereinafter "Cajun Rental"). According to Mrs. Hebert, Cajun Rental had mowing contracts with the State of Louisiana and the City of Lafayette. Mr. Hebert was the corporation's operations manager. Mr. Hebert testified that his duties included operating equipment during the day and repairing any equipment that was broken.

The underlying accident in this workers' compensation matter occurred on July 12, 2001,when Mr. Hebert and his crew were preparing to leave a job site. Mr. Hebert was attempting to load a four wheeler onto the back of a pickup truck when it flipped over and rolled over him. The record shows that Mr. Hebert sustained serious injuries to both shoulders, his left knee, and several nerve bundles. The occurrence of the work-related accident is not at issue.

Since the accident, Mr. Hebert has been under the primary care of his orthopedic surgeon, Dr. Roland Miller, and has been referred to different physicians for evaluation and treatment of his injuries. Medical records establish that Mr. Hebert

had surgery on his right shoulder to repair a tear of the right rotator cuff. The surgery adequately repaired the tear. However, according to Dr. Miller, complications from the surgery left Mr. Hebert with a detached deltoid muscle in his right shoulder. Surgery was also performed on Mr. Hebert's left knee which, according to Dr. Miller, was successful in repairing his medial meniscus and condylar damage.

Dr. Miller requested that Mr. Hebert be evaluated by the Center for Work Rehabilitation, Inc. at the Fontana Center for the performance of a functional capacity evaluation ("FCE"). Mr. Hebert completed a FCE on February 3, 2003 and February 4, 2003. Scott Guidry, the occupational therapist performing the FCE, concluded that Mr. Hebert could not return to his previous work level, but he could safely work at a light-medium work level. Mr. Guidry made a number of findings as to Mr. Hebert's abilities that were questioned by Dr. Miller.

Mr. Hebert did not agree with the FCE report and, in a February 10, 2003 letter, pointed out to his medical case worker what he believed were discrepancies in his evaluation. Mr. Hebert was particularly concerned with the FCE report's findings as to the physical activities he could perform. In addition, Mr. Hebert complained of certain conditions under which he alleges the FCE was performed. Further, he insisted that he signed the FCE report under duress. Mr. Guidry and Paul Fontana, the owner of the Fontana Center, testified at the hearing and denied many of Mr. Hebert's allegations.

Subsequently, Highlands Insurance Company, the workers' compensation insurer for Cajun Rental, hired a private investigator, to conduct surveillance of Mr. Hebert. Videotape segments of a number of surveillance periods were entered into evidence. Highlands contends, in its brief to this court, that the videotapes reveal Mr. Hebert "engaging in other activities that he contended he could not do. (Driving far

2

distances, operating an ATV, and using his arms and legs in various ways.)" One of the surveillance tapes dated October 16, 2003 relates to Mr. Hebert's presence at a church where Highlands contends he was hired to provide "equipment and services[.]"

As a result, Highlands terminated Mr. Hebert's benefits and filed a disputed claim form contending that Mr. Hebert violated La.R.S. 23:1208 and as such forfeited his rights to further benefits. Specifically, Highlands asserted that Mr. Hebert misrepresented to both Highlands and his physicians his activity level and residual abilities, misrepresented activities and abilities related to his FCE, and denied engaging in work for which he has been recompensed. Mr. Hebert also filed a form claiming that Highlands unreasonably terminated his benefits.

After a hearing, the workers' compensation judge found that Mr. Hebert had intentionally misrepresented his abilities for the purpose of bolstering his entitlement to workers' compensation benefits. Therefore, benefits were forfeited pursuant to La.R.S. 23:1208.

In the instant appeal, Mr. Hebert has designated the following assignments of error:

I.      The trial Court committed manifest error and abused its discretion in terminating claimant/appellant's workers' compensation benefits.

II.     The trial Court committed manifest error in finding Mr. Hebert had violated Louisiana Revised Statute 23:1208, despite uncontroverted medical evidence establishing the extent and nature of his disability.

III.    The trial Court committed manifest error in finding that defendant, Highland, established a "willful misrepresentation" for the purpose of obtaining benefits, as required by La.R.S. 23:1208.

3

**Discussion**

*Violation of La.R.S. 23:1208*

Mr. Hebert argues that the trial court was manifestly erroneous in concluding that Highlands demonstrated that the requirements of La.R.S. 23:1208 were satisfied by any of his statements or representations. In part, Mr. Hebert focuses upon medical evidence suggesting the severity of his injuries. He contends that the weight of this evidence indicates that findings as to his ability to work in the FCE were incorrect. Furthermore, he questions the workers' compensation judge's observation that, although he reported to his physician that he was able only to sit for a limited period of time, that he appeared to sit throughout the hearing without difficulty. He notes that the report to his physician was made over two years before the hearing. Finally, he contends that surveillance videotape of him engaging in alleged work does not reveal either that he was working at the time of the filming or that he was engaging in any activities that he asserted that he could not perform. He argues that any such activities caused substantial pain or were not sustainable. In short, Mr. Hebert contends that the evidence lacks sufficient weight to indicate that he made willful misrepresentations in any regard in order to affect his eligibility for workers' compensation benefits.

Louisiana Revised Statutes 23:1208 provides, in pertinent part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

4

Forfeiture of workers' compensation benefits is proper when: "(1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Const. Co.*, 94-2708, 94-3138, p.7 (La. 9/5/95), 660 So.2d 7, 12. A workers' compensation judge's determination as to whether the elements of La.R.S. 23:1208 are satisfied will not be reversed on appeal absent manifest error. *Labor Finders v. Batiste*, 04-1586, (La.App. 3 Cir. 4/6/05), 899 So.2d 190, *writ denied*, 05-1149 (La. 6/24/05), 904 So.2d 743.

Following the attorneys' closing arguments, the workers' compensation judge noted that she agreed with some of the argument advanced by Mr. Hebert's attorney. However, in ultimately finding that La.R.S. 23:1208 was satisfied, the workers' compensation judge stated as follows:

> But the one, the biggest point and, to some extent it is largely a determining factor, is that Mr. Hebert told Dr. Miller he could not sit for more than three minutes at a time. He disagreed – that's one of the items in the FCE that he disagreed with, that he could sit for forty-five minutes at a time. Mr. Hebert has sat with me today at least two hours in the morning and close to two hours this afternoon without moving around, getting up, standing, stretching, any movement any different than any other one of us in this room. We have all sat here for four hours, and there has been some shifting, but Mr. Hebert has moved no more than any of us.
>
> This morning – and we have not taken a break. And let me say, I needed a break this morning, but I was very curious to see if we would make it the whole time. Mr. Hebert did get up, took a brief recess on his own, two to five minutes, when he got up and left. And when he walked back in he did not appear stiff. He did not move with any pain. His movement today it appears as unrestricted as it does in the videotape.
>
> The videotape is not – I mean, it doesn't show him doing cartwheels. But I've said before, a videotape of someone walking is not really significant unless the person tells you they can't walk. The degree of significance of tape depends on the degree of restrictions given by the person.

5

You are correct, he is the only one who can tell us if he is in pain. But that's where the problem is. I think Mr. Hebert has exaggerated his complaints to such an extent that I am compelled to find that it is an intentional misrepresentation for the purpose of bolstering his entitlement to benefits.

As to motivation, I can't answer that. I don't need to. I simply need to find was it a misrepresentation. Yes. I think Mr. Hebert has misrepresented his abilities. Was it intentional? Yes. I do not believe it was inadvertent. I don't think there was any memory loss, memory problem or any other type of inadvertent statements.

Was it for the purpose of obtaining workers' compensation benefits? I have to assume so since it directly impacted his disability ratings, impairment ratings. You know it could have also been to obtain Social Security benefits. But I cannot think of any other reason other than to obtain benefits.

I wish I had the discretion to award some lesser sanction because quite clearly there was an injury. There are some continued problems. But I do not have that discretion having found that the *Resweber* requirements are met and that 1208 has been violated. I need to enter a judgment that Mr. Hebert has forfeited his entitlement to benefits.

And I know I focused primarily on the sitting here today because that is something I observed with my own eyes, but it is indicative of the full reasons that I – that I find 1208 has been violated. Because there has been a lot of back and forth about, for example, the FCE. Mr. Hebert didn't need to "gild the lily" to use Mr. Riley's phrase. He clearly was entitled to medical benefits. That wouldn't have been affected. Indemnity was more questionable. There has been a direct impact on the indemnity question because of the exaggerations and misrepresentations. It appears as though the company made Thirteen Thousand Dollars in a six-month period without even trying on a volunteer basis. Certainly, if some effort were given, I think indemnity could have been impacted.

But, in any event, I do find that 1208 has been violated. And, again, I take no pleasure whatsoever in reaching that finding.

As recognized in the above reasons for ruling, it is unquestioned that Mr. Hebert sustained injury and that he continues to suffer from related problems. However, the workers' compensation judge concluded that Mr. Hebert's continued injuries are not as severe or as debilitating as he has expressed. While the degree of injury and related disability are related to the workers' compensation judge's

6

determination in this case, the presence of injury or disability, alone, is not determinative in a La.R.S. 23:1208 analysis. Rather, as noted in *Resweber*, 660 So.2d 7, the focus of the inquiry is whether there was a willful, false statement or representation made to obtain or defeat workers' compensation benefits. Our review of the record reveals support for the workers' compensation judge's determination that these factors were satisfied.

We first note that Mr. Hebert contests the workers' compensation judge's observation that he reported to his treating physician that he could only sit for a short period without discomfort whereas he was able to sit for the length of the hearing without apparent discomfort. Mr. Hebert asserts that the workers' compensation judge's focus in this regard was misplaced as the statement was made more than two years prior to the hearing. Although the workers' compensation judge referenced the statement made to Dr. Miller, one that Dr. Miller again addressed in his deposition taken before the trial on the matter, the FCE report also contains information that Mr. Hebert could sit for forty-five minutes. The workers' compensation judge's observation that Mr. Hebert appeared to sit throughout the hearing without apparent discomfort was not in error insofar as it factored into a determination of Mr. Hebert's credibility. As noted by the workers' compensation judge, Mr. Hebert denied that he could sit for forty-five minutes in a letter dated February 10, 2003 wherein he questioned the FCE report.[1] This type of conflict between the conclusions drawn by

---

[1] The letter includes doubts as to a number of the findings and statements included in the FCE. With regard to the issue particularly referenced by the trial court, the issue of the ability to sit, Mr. Hebert wrote as follows:

> The O.T. verbally attacked me about my disagreement with him on this one. He stated he knew I could sit for 45 minutes without interruption, because that is how long it took to fill out the paperwork while we were seated at his desk the first day of the evaluation. The O.T. is a very busy person. He either forgot he was called away from his desk three times, several minutes each time, while we were filling out the paperwork or he is intentionally misstating facts. However, each time he left, I took the opportunity to stand, stretch, and walk around until he would get back.

the therapists completing the FCE report, along with their testimony at trial, and the statements made in Mr. Hebert's letter wherein he questioned a number of their findings called for certain credibility determinations. The workers' compensation judge was entitled to consider observations at trial in these determinations. Reasonable credibility determinations are not to be disturbed on review where conflict exists in the testimony. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La. 2/28/94), 633 So.2d 129.

Furthermore, as explained above, Highlands presented surveillance videotape that it asserts indicate Mr. Hebert's performance of work-related activities in October 2003 at a church. While the workers' compensation judge's reasons do not demonstrate that great weight was placed on the tapes, the record supports the workers' compensation judge's determination on the issue of whether Mr. Hebert actually performed work, obtained compensation for that work, and possibly made false statements regarding such work. When questioned in his March 2004 deposition, Mr. Hebert denied having "gone out on any jobs or tried to do any work in reference to Cajun Rentals within the last 12 months[.]" He also responded negatively when asked: "Other than your attempts to keep Cajun Rentals open, which you did more than a year ago, have you done any employment at all for wages since your accident?" When subsequently asked whether he had heard of the church where he was seen on the October 2003 videotapes, he responded that he knew "some of the parishioners there." Upon questioning, as to whether he had ever provided "labor services, work of any kind" to the church, he explained that he thought he "did some volunteer work for them there." Mr. Hebert explained that he "oversaw some guys working there." Mr. Hebert named Richard Comeaux as the person with whom he was dealing at the church.

8

Mr. Comeaux's deposition was also entered into evidence. He explained that in 2003 he contacted Mr. Hebert to provide tools and supervision for cleaning the ditches at the church. He explained that he paid Mr. Hebert for the services. He further stated that he also hired Mr. Hebert to provide supervision for labor at a location on Toledo Bend. He confirmed that this latter job was within the previous year. Mr. Comeaux explained that he was interested in both supervision and equipment rental when he contacted Mr. Hebert. Jacqueline Hebert, Mr. Hebert's wife, testified in her deposition that she and her husband own Cajun Rental in its entirety. She explained that her understanding of the relationship with Mr. Comeaux was that he was strictly hiring Cajun Rental's equipment and that none of this money was paid to Mr. Hebert in wages. She stated that he received no personal income from the rental and that the funds were used for the inactive business's outstanding loans.

Although the workers' compensation judge could have accepted Mr. Hebert's version of events that only Cajun Rental's equipment was rented and that he did not perform any duties or receive any wages from the work at the church, the workers' compensation judge was not required to accept this version of events. Rather, the workers' compensation judge was presented with evidence from Mr. Comeaux who explained that he contracted for both equipment rental and supervision on the project that was allegedly captured on videotape. He additionally stated that he did the same on the Toledo Bend project. The payments made were received by Cajun Rentals, a business wholly owned by Mr. Hebert and his wife.

Given the evidence of the occupational therapist's findings in the FCE, the defendant's denial of many of those findings in a response letter he authored, and evidence permitting a view that Mr. Hebert had worked in some capacity despite his clear denial, we conclude that the workers' compensation judge's determination that

misrepresentations or false statements were made is supported by the record. Further, the record supports a determination that the second and third elements of La.R.S. 23:1208 were also satisfied, namely whether these statements were willfully made and whether they made for the purpose of obtaining benefits. With regard to whether any false statement was willful, the workers' compensation judge was free to weigh the letter contesting the FCE statements and Mr. Hebert's statement he had performed no work for wages and conclude that these statements were both willful and that they were made for the purpose of affecting workers' compensation benefits. As noted in the reasons for ruling, the degree of Mr. Hebert's impairment or disability ratings could have been impacted by such information.

For these reasons, we find that Mr. Hebert's arguments on appeal lack merit.

## DECREE

For the foregoing reasons, the ruling of the workers' compensation judge is affirmed. All costs of this proceeding are assigned to the appellant, Edwin "Sonny" Hebert.

**AFFIRMED**.