# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-593


LINDA HARBOR

VERSUS

CHRISTUS ST. FRANCES CABRINI HOSPITAL


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 03-07882
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED.**

Kathryn Fowler Van Hoof
VanHoof Law Firm
Post Office Box 339
LeCompte, LA   71346
(318) 776-4836
COUNSEL FOR DEFENDANT/APPELLANT:
     Christus St. Frances Cabrini Hospital

Eugene A. Ledet, Jr.
Rivers, Beck, Dalrymple &Ledet
Post Office Drawer 12850
Alexandria, LA   71315-2850
(318) 445-6581
COUNSEL FOR PLAINTIFF/APPELLEE:
     Linda Harbor

AMY, Judge.

In this workers' compensation dispute, the claimant-employee was injured while in the course and scope of her employment with the defendant hospital. She subsequently filed a disputed claim for compensation. Instead of a trial, the parties submitted the matter for a decision based on trial briefs and exhibits. The workers' compensation judge found in the claimant's favor. The defendant's motion for new trial was denied. The defendant appeals, asserting three assignments of error. For the following reasons, we affirm.

## Factual and Procedural Background

The record indicates that on October 15, 1998, Linda Harbor, a housekeeper at Christus St. Frances Cabrini Hospital, attempted to lift a twenty-five pound garbage bag when she "immediately felt something like a crack in her back." Harbor was rushed to Cabrini's emergency room; X-rays were taken and she was given medication. Harbor was subsequently treated by several physicians in different medical fields for pain caused by the work-related accident.[1]

Harbor filed a disputed claim for compensation form seeking "[a]ttorney fees and penalties for employers failure to authorize medical treatment with James W. Quillin, PhD as recommended by her treating physician, Robert K. Rush, M.D.; failure to authorize payment of prescription medications prescribed by her treating physicians." Cabrini responded by filing its own disputed claim form in which it questioned the medical necessity of a psychological evaluation. In addition, Cabrini referenced Harbor's alleged "failure to cooperate with vocational rehabilitation." The

---

[1] As the extent of Harbor's injuries have been documented in a prior appeal, we do not discuss them here. *See Harbor v. St. Frances Cabrini Hospital*, 01-1551 (La.App. 3 Cir. 5/15/02), 817 So.2d 1269, *writ denied*, 02-1684 (La. 10/4/02), 826 So.2d 1125.

form included a notation regarding the termination/suspension of benefits and also referenced attorney fees.

In her amended disputed claim form, Harbor also requested "[a]ttorney fees and penalties for employer's failure to pay medical bills associated with treatment received as a result of the injuries sustained by employee." Cabrini alleged, in its amended disputed claim form, that Harbor made fraudulent misrepresentations for the purpose of obtaining mileage reimbursement.

There was no trial on the matter. In lieu of live testimony, the workers' compensation judge (WCJ) permitted the parties to submit the matter for a decision based on trial briefs with exhibits attached thereto. With regard to Harbor's "claim for penalties and attorney['] s fees associated with the failure to timely authorize medical care and the late payment of medical bills and prescriptions[,]" the WCJ stated that "since the filing and submission to the Court, essentially the claimant has withdrawn her claim for those matters and has presented no evidence to support those matters. So those claims are withdrawn, and they're withdrawn with prejudice."

The WCJ denied Cabrini's claims. Cabrini subsequently filed a motion for new trial, which the WCJ also denied. Cabrini now appeals, asserting the following assignments of error:

> 1. The finding of the trial judge that HARBOR did not fail to cooperate with vocational rehabilitation efforts (including but not limited to missing numerous voc rehab meetings without notice, failure to pursue a G.E.D., failure to pursue psychological treatment, physical therapy and a work hardening program recommended by her physicians), is manifestly erroneous and reversible in the law and not supported by the Record, especially considering that even HARBOR responded to CABRINI's allegation of failure to cooperate with voc rehab efforts by noting merely that no court order yet existed compelling cooperation.

2

2. The finding by the trial judge that mileage reimbursement misrepresentations by HARBOR were simply mistakes due to confusion caused by medication and low IQ and were not a willful intent to deceive is manifestly erroneous and reversible in the law and not supported by the Record, where there was no evidence that, at the time she completed the mileage reimbursement forms, the appellee was suffering from confusion caused by medication aggravated by low IQ and she was, in fact, represented by an attorney at the time the forms were completed, through whose office the forms were submitted for reimbursement.

3. The judgment of the trial court was clearly contrary to law and evidence, thus mandating a new trial pursuant to La. C.C.P. art. 1972, and the court also erred in not granting a new trial for good ground pursuant to La. C.C.P. art. 1973.

**Discussion**

*Standard of Review*

In *Shepard v. Scheeler*, 96-1690 (La. 10/21/97), 701 So.2d 1308, the supreme court held that even when the evidence consists solely of written reports, records, and depositions, the appellate court cannot overrule the trial court's finding of fact absent manifest error. *See also Darbonne v. Wal-Mart Stores, Inc.*, 00-551 (La.App. 3 Cir. 11/2/00), 774 So.2d 1022.

*Vocational Rehabilitation*

Cabrini argues that in filing its disputed claim form, it sought "cooperation with vocational rehabilitation efforts when HARBOR initially refused to meet with the vocational rehabilitation consultant[.]" Furthermore, it contends that Harbor consistently failed to "cooperate with medical case management and vocational rehabilitation efforts after the process finally began, including many missed appointments" with the vocational rehabilitation consultant, physical therapist, and psychologist. Cabrini asserts that Harbor did not attempt to get her GED. Citing La.R.S. 23:1226, Cabrini argues that the WCJ committed manifest error in not issuing

an order compelling Harbor's cooperation with vocational rehabilitation. Lastly, Cabrini alleges that the WCJ erred in not finding that Harbor's failure to cooperate prevented her from completing vocational rehabilitation.

Louisiana Revised Statutes 23:1226 provides in pertinent part:

> A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. Vocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors as established by R.S. 37:3441 et seq.
>
> . . . .
>
> (c) The expedited procedure shall also be made available to the employer to require the employee's cooperation in the rehabilitation process. Refusal to accept rehabilitation as deemed necessary by the worker's compensation judge shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal.

In his oral ruling, the WCJ stated:

> [T]he employer contends that they are entitled to suspend or reduce Ms. Harbor's benefits for failure to comply with a work hardening psychological program to get her back in the work force essentially alleging that they're entitled to reduction for failure to comply with vocational rehabilitation and they argue in brief that Ms. Harbor has failed to comply or cooperate with a medical case manager; however, I note the case of <u>Martin versus Davison Transport, Incorporated</u>, 810 So.2d, Page 1103, where the Supreme Court decided that the employer has no right to a medical case manager to begin with. So since the employer has no right to a medical case manager, there can be no requirement that an injured worker comply with any requests made by a medical case manager.
>
> They argue that she had failed to cooperate with any vocational efforts, that she had failed to even try to go back to work on her own, and she has failed to cooperate with medical care. I note the case of <u>Banks versus Industrial Roofing and Sheet Metal Works, Incorporated</u>, 696 So.2d, Page 551, wherein the Supreme Court laid out the guidelines with respect to vocational rehabilitation and pointed out that the employer cannot point to a claimant's lack of effort in lieu of the

4

employers presenting sufficient evidence of job availability within the claimant's physical capabilities.

However, before there can even be a lack of effort on behalf of the employee, there must first be appropriate vocational rehabilitation offered. So I looked at the exhibits, Defense Exhibit 16 with regard to the efforts of vocational rehabilitation, which apparently commenced after the litigation was filed by Ms. Harbor in this case. . . . It says in a report dated November 19th of 2004 that there's a complete vocational evaluation and job seeking skills training performed. . . . There is [sic] no records to show me that the vocational counselor did any type of educational testing to ascertain the level of ability that Ms. Harbor had.

We know from the records in May of 2004 that she has low intelligence, that she's reading at a third grade level. There's no indication that the vocational counselor, Ms. Theresa Lous (phonetic) was even aware of that information when she suggested to Ms. Harbor that she get a GED[.] There is no evidence in the record that Ms. Harbor is even capable of acquiring a GED with her low intelligence. They contend that Ms. Harbor has failed to comply in doing this. Well, she has transportation problems that are well document[ed] throughout the vocational records -- the medical -- the case -- the nurse case manager's records, they suggest to Ms. Harbor that she go down to the School Board and bring with her Ten Dollars ($10.00) for the testing. Well, I find that this is sham rehabilitation. Certainly the rehabilitation counselor could have paid for the testing material, brought that herself to Ms. Harbor, had Ms. Harbor take the test to see if she was even qualified to obtain an [sic] GED. Moreover, as even argued by the employer in its brief, they contend she failed to do this because it would have made her more employable. And I emphasize the words more employable for light duty, because that indicates to the Court that at least they recognize that she was somewhat employable for light duty, yet they made no effort to provide any type of vocational rehabilitation to get her any type of light-duty employment.

[In] Louisiana Pacific Corporation versus Albritton (phonetic), 773 So.2d, Page 170, . . . the Third Circuit noted that it was inappropriate to suspend benefits for failure to attend physical therapy . . . Now I return to the issue of whether or not she cooperated with a work hardening program, whether or not she had reason to cooperate with a work hardening program and psychological follow up in association with the work hardening program.

In her depositions, Ms. Harbor testified that subsequent to her medical care and her surgery, she has been having problems with her legs swelling. . . . Dr. Watermeier has attributed the claimant's intermittent left leg swelling to the effects of vein ligation during surgery, and the blood flow must reestablish or re-route itself following

5

surgery. This development is not uncommon following surgery and may take several years to resolve. Treatment consists of elevating legs and possibly a compression stocking.

. . . .

She is under the continuing medical care, and I realize the doctor said she is capable of light duty in August of 2003 and in May of 2004 the psychologist said from a psychiatric point of view she is able to work, but I particularly note in June of 2005, she has a worsening condition, she needs more medical testing, she needs referrals and consults for treatment of that care. So I simply conclude at this juncture that vocational rehabilitation is presently inappropriate until Ms. Harbor's full medical condition is diagnosed and properly treated.

In *Flynn Manufacturing v. Deville*, 95-1282, pp. 2-3 (La.App. 3 Cir. 3/6/96), 670 So.2d 766, 767, *writ denied*, 96-0816 (La. 5/17/96), 673 So.2d 610, the employer appealed the hearing offer's ruling that vocational rehabilitation was not necessary. In affirming the hearing officer's ruling, a panel of this court stated:

> The reduction of benefits for refusal to participate in a vocational rehabilitation program offered by an employer is governed by La.R.S. 23:1226(E), which states in relevant part:

> > Refusal to accept rehabilitation *as deemed necessary by the hearing officer* shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal.

> > La.R.S. 23:1226(E); (emphasis added).

> The hearing officer reviewed the record evidence and found that the defendant's pending surgery made the plaintiff's request for vocational rehabilitation premature. The manifest error standard applies to the review of the factual determinations made by a hearing officer in a worker's compensation action. The findings of fact should be overturned only if "clearly wrong." *Alexander v. Pellerin Marble and Granite*, 93-1698 (La. 1/14/94); 630 So.2d 706.

> Based on our review of the record, we cannot say that the hearing officer was clearly wrong in her determination that the vocational rehabilitation was not necessary at that time. The fact that the outcome of the operation is unknown would make a prior vocational assessment useless. It would be impossible to accurately predict the result of the

6

pending operation in order to make a determination of Deville's post-operation capacity. The vocational evaluation and rehabilitation would be far more appropriate after the results of the operation were available.

Here, too, we find no clear error in the WCJ's determination that vocational rehabilitation was not necessary at the time of ruling. The WCJ did not rule out the possibility that Harbor may need vocational rehabilitation in the future. Rather, he determined that vocational rehabilitation was "presently inappropriate until Ms. Harbor's full medical condition is diagnosed and properly treated."

Accordingly, this assignment has no merit.

*Mileage Reimbursement*

Cabrini argues that the WCJ erred in "ruling that HARBOR did not willfully make false statements for the purpose of obtaining workers' compensation mileage benefits when she represented in writing that she traveled as follows and claimed the following mileage expense reimbursement when she did not, in fact, incur travel expense on those dates[.]" Cabrini, therefore, contends that pursuant to La.R.S. 23:1208, Harbor's willful misrepresentations should result in her forfeiture of workers' compensation benefits.

Louisiana Revised Statutes 23:1208 provides in pertinent part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

7

In *Cajun Rental & Services v. Hebert*, 05-482, p. 5 (La.App. 3 Cir. 12/30/05),

918 So.2d 605, 608, this court explained:

> Forfeiture of workers' compensation benefits is proper when: "(1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Const. Co.*, 94-2708, 94-3138, p. 7 (La.9/5/95), 660 So.2d 7, 12. A workers' compensation judge's determination as to whether the elements of La.R.S. 23:1208 are satisfied will not be reversed on appeal absent manifest error. *Labor Finders v. Batiste*, 04-1586, (La.App. 3 Cir. 4/6/05), 899 So.2d 190, *writ denied*, 05-1149 (La.6/24/05), 904 So.2d 743.

In his oral ruling, the WCJ explained:

> [T]here was no trial of this matter. As I said, it was all submitted on deposition which makes it a little bit difficult for this Court, because we're dealing with credibility issues and a lot of that determination is made by a Court's observation of persons testifying but here no one testified, no adjusters testified, Ms. Harbor did not testify, and the only thing I had to review was records and -- and depositions. So I reviewed the two depositions of Ms. Harbor, the one taken by Ms. Van Hoof and the deposition taken by Mr. Ledet and reviewed all the documents submitted in support of the 1208 violation claim.

> And, essentially, as I have reviewed the matter, it boils down to the fact that Ms. Harbor submitted a claim for medical reimbursement, mileage reimbursement in October of 2003 which encompassed the time from January of 2003 through October of 2003 and essentially on the first page apparently of that mileage submission, the matters in dispute by the employer are a visit to Dr. Watermeier on January the 16th of 2003, a visit to Dr. Watermeier on April 4th of 2003, to Dr. Adinolfi on April 26th of 2003 and to Dr. Watermeier on May 12th of 2003.

> It is contended by the employer that with respect to the appointment with Dr. Watermeier on May 12th of 2003 that they had previously paid transportation for that visit and as well as having paid transportation for a visit, I believe it was, January 16th of 2003 with Dr. Watermeier. And in the deposition of Ms. Harbor taken by Ms. Van Hoof, questions were asked as to whether or not Ms. Harbor had ever made any reimbursement of payments that allegedly she was not due for this allegedly false mileage claim. And there's an affidavit that's filed in exhibits . . . medical records showing the dates of visits of Ms. Harbor. We know that Ms. Harbor doesn't drive herself to any visits, and so I have to review this carefully . . . to determine whether or not Ms. Harbor had a willful intent to deceive.

8

And I find significant in making this determination the records of Dr. Bianchini (phonetic) . . . who is a psychologist that the employer had examine Ms. Harbor in respect to whether or not she -- she needed certain types of psychological care or work hardening program or pain adjustment treatment. And Dr. Bianchini did his evaluation in April of 2004, and essentially Ms. Harbor noted to Dr. Bianchini that because of the medications and problems she was having in association with her claim that she was suffering from some confusion . . . But significantly I note that when he did his testing of Ms. Harbor, he noted that her overall IQ was only 66 which was low average.

. . . .

The mileage request was submitted months after she made the actual mileage trips and she said she did this from a calendar and she -- and in the brief submitted on her behalf that she -- she said she made a mistake and that was her testimony in both depositions and essentially the employer says, "Well, you know, this is just hindsight an[] attempt to rehabilitate yourself." However, I conclude based on my review that there has been no intentional -- intentional nor willful deposition -- misrepresentation of the mileage.

. . . .

The only thing I could find as a possible overpayment would have been a trip on April -- on January 16th of 2003 to Dr. Watermeier, apparently where there was some prepaid transportation. However, as the records -- medical records reflect and has been pointed out in brief on behalf of Ms. Harbor, she actually made a visit to Dr. Adinolfi on March 26th of 2003 and had made no claim for mileage reimbursement, and his medical records do reflect that she actually had that appointment and she made the appointment and the mileage claim indicates that she made no attempt to collect for that mileage reimbursement. She never insisted after she received a lessor sum of payment then she had submitted that she was due the payments for the travel apparently in question by the employer. She has been receiving compensation benefits from 1998, no indication in all that length of time that Ms. Harbor ever intentionally tried to receive anything to which she was not entitled under Workers' Compensation Law.

I accept Ms. Harbor['s] explanation that it was a mistake given her low average IQ and her confusion and [sic] noted by the psychologist, by the defense attorney in the questioning of Ms. Harbor and by all the other records.

In her deposition dated August 9, 2005, Harbor was questioned at length about the mileage reimbursement form that she completed. According to Harbor, that form

9

was completed in October 2003; she was requesting reimbursement for doctor's appointments that she attended in January 2003 to October 2003. Harbor stated that she completed the form using a calendar in which she wrote down all of her appointments. She further stated that in October 2003, she was on medications that made her sleepy, drowsy, and caused memory problems. Harbor admitted that she made some mistakes and offered explanations for putting the wrong dates and/or doctor's names.

We note, as the WCJ did, that he did not have the opportunity to assess Harbor's credibility and demeanor by in-court testimony, but rather only by deposition. However, jurisprudence nonetheless provides that the WCJ was free to accept or reject any part of Harbor's deposition testimony. *Cross v. Lake Area Rehab. Serv., Inc.*, 00-224 (La.App. 3 Cir. 10/11/00), 771 So.2d 768. As such, we find no manifest error in the WCJ's determination that Harbor did not make fraudulent misrepresentations regarding her mileage reimbursement.

This assignment is without merit.

*New Trial*

Cabrini alleges that the WCJ's judgment was clearly contrary to the law and the evidence; therefore, a new trial is warranted under La.Code Civ.P. art. 1972 or 1973.

Louisiana Code of Civil Procedure Article 1972 states that a new trial shall be granted "[w]hen the verdict or judgment appears clearly contrary to the law and the evidence." Louisiana Code of Civil Procedure Article 1973 provides that a "new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." When reviewing the grant or denial of a motion for new trial under

10

La.Code Civ.P. arts. 1972 and 1973, the appellate court cannot reverse the WCJ's decision unless an abuse of discretion can be demonstrated. *Smith v. Alliance Compressors*, 05-855 (La.App. 3 Cir. 2/1/06), 922 So.2d 674.

In its motion for new trial, Cabrini advanced arguments similar to those asserted in the instant appeal. After reviewing the record, we find no abuse of discretion in the WCJ's denial of the motion for new trial insofar as there are no peremptory or discretionary grounds warranting a new trial. Therefore, this assignment has no merit.

## DECREE

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. All costs of these proceedings are assessed against the defendant, Christus St. Frances Cabrini Hospital.

**AFFIRMED.**